Portとか it's long I am not used to the Smoker This is insane It smells bad Intercom Twitch Good morning again ladies and gentlemen We take the last two cases on the calendar United States v. Goss Counsel Please support My name is Mark Meyer I represent the appellant Leslie Dean Goss Mr. Goss is here appealing the district court's denial of his rule 29 motion at the conclusion of the government's case on the prosecution for carjacking Mr. Goss contends the evidence presented at trial was insufficient to sustain his carjacking conviction Mr. Goss concedes that while the conduct would have constituted an assault under Montana law it doesn't meet the intent requirements for the federal prosecution of carjacking Just a brief recap of the factual situation The prosecution is predicated upon some events that occurred on December 3rd, 2005 in the parking lot of the Lido Bar in Great Falls, Montana Shortly before 2 o'clock in the morning shortly before closing time Ronald Paulson left the Lido Bar got into his pickup truck and drove a short distance into the parking lot of the Lido Bar where he was and stopped his vehicle Shortly thereafter a van operated by Don Connell drove into the bar's parking lot and Leslie Dean Goss and his nephew Shane Goss both of whom were intoxicated exited the van and attempted to gain entrance into the Lido Bar The incident was captured by the surveillance videotape from the bar reflects that Leslie Goss and Shane Goss were denied entry into the bar as the bar was closing They stagger back towards the van Leslie Goss staggers up into the parking lot where a confrontation ensues with Ronald Paulson who was in his truck in the parking lot Mr. Paulson testified that as he was opening his truck door to speak to Mr. Goss Mr. Goss reached in, grabbed him, pulled him out while his truck was still engaged in gear The truck began rolling through the parking lot out into the street and it's beyond dispute that Shane Goss ran jumped into the truck and stopped the truck Mr. Goss, his confrontation with Ronald Paulson Mr. Paulson's admission lasted about 15 seconds Leslie Goss left, Ronald Paulson got up ran to the truck and both Shane Goss and Leslie Goss drove off with Mr. Paulson's vehicle But he did pull him out of the truck and he hit him Yes, yes he did It's our position that based on the United States Supreme Court's decision in Holloway regarding the mens rea for the carjacking offense that wasn't satisfied under the facts of this case As you know the Holloway court requires the focus to be on the defendant's state of mind at the precise moment he demanded or took control over the vehicle and that while we can see Mr. Goss clearly intended to assault Ronald Paulson either his intent or the force he employed was in furtherance to the subsequent taking of Mr. Paulson's vehicle that the force, while it was employed to harm Mr. Paulson wasn't employed to take his vehicle and therefore doesn't give rise to sufficient evidence to sustain the conviction under the carjacking statute But isn't the standard that we have to view all the evidence in the light most favorable to the prosecution at the appellate level here You've got your client pulling Mr. Paulson from the vehicle repeatedly hitting him and then going into the truck Why did he pull him out of the truck? If you look at the facts in most favorable light to the prosecution Perry wanted him out of the truck and he wanted to get in the car, in the truck rather which he did I guess it's the contemporaneous nature of the assault versus the subsequent with the vehicle leaving the scene and Mr. Goss getting in the vehicle then as well as the factual issue at the trial we written there wasn't definitive there was an issue as to who drove the truck away from the bar Did that even really matter? I mean the reality is you have a videotape of this a little unusual, but you have a videotape the prior fact saw the videotape formed conclusions and in our situation we review in the light most favorable to the prosecution how do you overcome that counsel on this particular point? I guess I point the court to the Applewhite decision and say the fact that those decisions that followed Holloway subsequent to Holloway regarding carjacking convictions focused on the threat that was made by the defendant at the precise instance the vehicle was taken pointing a gun to the driver's head demanding control of the vehicle You're saying that there are other cases that are clearer what case says that this doesn't constitute intent that it couldn't be intent? I cited in our brief we focused on the United States v. Applewhite decision where the beyond dispute the defendant assaulted the victim with a baseball bat placed him into the victim's vehicle and drove off and was subsequently charged among other things with carjacking and the Third Circuit acknowledged that there was sufficient evidence to support the defendant's intent to kill or harm the victim but noted that unless the threatened or actual force is employed in furtherance of the taking of the car there's no carjacking within the meaning of U.S.C. 21-18, U.S.C. 21-19 But in this case though, your client repeatedly hit Mr. Paulson so there was threat or force involved There was an assault, yes So there's a difference from that other case, is there not? In that case, they just pulled him out There was no striking, no force being used In Applewhite? Yes No, there was force. They assaulted him with a baseball bat hit him over the head, knocked him unconscious and placed him in the victim's car Is that cited in your brief? Applewhite, 195 F3rd 679 Is that in your brief? It's not in my reply brief, John I don't think I have that either Doesn't make a lot of sense, counsel And also, under the facts of this case there was an assault in the parking lot Leslie Golders granted assaulting Ron Paulson and the vehicle leaves and Shane Goss the individual who takes control of the vehicle and from the defense point of view drives the vehicle away from the scene of the assault Your client got in the vehicle, did he not? Pardon? Your client got in the vehicle Yes Did he drive it? His position at the trial was that it was Shane Goss that drove the vehicle Didn't he push him over and take over the wheel? No He did not? No The surveillance video does reflect someone running around the front of the vehicle and entering the passenger side of the vehicle but it's not definitive as to which individual that was Okay I think we understand your point It's hard to imagine how you would ever get a conviction under the carjacking statute under your theory other than Shane's The reason I'm assaulting you is not because I don't like you I don't like myself but I really want to take you back and that's the purpose of my assault I guess I'd point the court to the other decisions cited in my brief The United States v. Att Well I looked at the afterword and they said the reason there was clear They wanted to kill the man for a clearly other reason that taking the car was incidental to him They wanted to kill the female defendant's former husband that was taking the car was incidental because they were trying to kill him not to get his car Here, they pulled him out of the van and beat him up to get his car What else would be clear? Well here you have an intoxicated individual and there's Mr. Paulson's testimony that he began a conversation You're saying that he could have warmly attested that he was intoxicated? That was one of the arguments raised in that trial And that was commended to the jury Yes, Your Honor Okay, so where are we? We've used half the time on this point Okay Other than the next argument we'd raise, Your Honor The sentence imposed by the District Court Mr. Goss was sentenced to 180 months imprisonment We've argued that that sentence was unreasonable in light of the fact Let me ask you one thing The judge portrayed him as sort of a conscious criminal and you look at the record and you say all of the offenses that were ten years earlier were major offenses and this was with the judge The sentence was literally changed to a period of imprisonment all the intervening time and whenever he got out he'd have to get a dismissal sentence Is that an inaccurate impression I have reading the record? No, that's accurate, Your Honor There was a period of three offenses he'd be prosecuted in state court four, and was incarcerated The argument on the unreasonable sentence goes to the fact he received a sentence of 180 months subsequent to his conviction the United States charged Shane Goss, the other individual with assisting Mr. Goss in carjacking with the intent to hinder or prevent his apprehension and he ultimately received an 18 month sentence The reasonableness argument the disparity in the sentences imposed Did Shane Goss have the same criminal record? No. No, Your Honor Your client was a career criminal? Yes, he was, Your Honor The other Goss was younger? Yes, it was his nephew What's surprising about the younger one without a record getting a much lighter sentence than the older one who was a career criminal? Given the factual issue that existed as to who won the fact that Shane Goss took control of the vehicle initially and from the defense point of view took control, remained in control, and drove the vehicle away from the bar on the evening of questioning Well, that's back to the earlier question Which do you think works? The one who pulls the man out of the car and heats him up? Or the other guy who drives the car off? Would the guy who's the assailant? Well, I guess our point would be the one who jumps in the vehicle makes the decision to take the vehicle Well, that doesn't mean he made the decision to jump. He was the younger one the nephew It's helpful if the guy with the long record heats somebody up so that they can get a car. Why do you assume it's the younger one who made the decision? I guess that would be if there was any evidence of any pre-plan to go to the bar and steal someone to carjack someone I would agree with you but here, it's just a random incident in the bar parking lot by two drunk individuals fight ensued and Shane Goss was the one who took control of the vehicle at that time and from the defense point of view he stayed in control of the vehicle throughout we have an assault to be sure under state law but it doesn't rise to the level of a federal carjack Good morning, my name is Joe Thagard I'm an assistant United States attorney from Great Falls, Montana and I prosecuted this matter addressing the first issue raised by the defendant I would note that it's a  criminal case as to how the defendant is charged I would note that it's a common issue as to how criminal intent is established and it's typically inferred from the circumstances of the offense and the actions of the defendant certainly in this instance where this defendant went up to this car pulled the man out, proceeded to beat him up jumped into the vehicle once it was secured that the jury viewing the facts in the light most favorable to the government infer the necessary criminal intent I would also add that I don't think who initially seized the car You say that the jury viewed the facts in the light most favorable to the government? No, I'm saying that at this point when the court is reviewing Of course, right, but at the time the jury reviewed it, you had to prove beyond a reasonable doubt that the crime had been committed I would have made my job a lot easier if I had that standard, but I don't know that would be part of the Constitution Certainly I think with respect to who took control of this car in a large sense that's irrelevant The jury was instructed on an aiding and abetting theory here and they certainly could have found a basis for culpability based on that I would also note that with respect to the criminal intent issue that the jury was instructed on intoxication Again, they had an opportunity to view that and determine whether or not the level of intoxication would have prevented this defendant from forming the requisite intent, and they apparently rejected that Finally, I turn my attention to Applewade and Harris, which are the two principal cases cited by the defendant I think those cases really are significantly distinguishable in this case in two respects  I think that's really clear Judge, now I'll just turn to Harris And the critical issue with Harris, again is, as in Applewade the defendant testified, and there was another theory put forth really in the absence of any sort of even circumstantial evidence from the government as to what was going on with the defendants in those two cases when they took possession of those cars And again, Harris, like Applewade, I think was essentially a murder case where the vehicle was taken as an afterthought Unless the panel has any questions on the first issue I'll turn to the issue of reasonableness And I think that the panel basically hit the nail right on the head in addressing that On one hand we have the nephew, who I believe was a 20-year-old kid with a minimal criminal record. On the other hand there's the defendant in this matter Mr. Goss, who had an extensive criminal history an extensive criminal history that was so extensive in fact that he was a career defendant based on that Mr. Taggart, I believe you were in the courtroom when we had the colloquy with the counsel in the previous case Yes, Your Honor And I asked counsel at that point about their their impression about whether we need to wait for Zabala Carty, our case As you know Rita decided certain things but apparently somebody died and the Supreme Court didn't get to the other part of the question. Do you think that we need to wait in this case to be able to know the standard upon which we are determining reasonableness or by virtue of the fact that as circuit judges we are given the instruction under the statute to determine whether the sentences in quotes were reasonable without much more guidance can we decide it based on that alone? Judge, I'll confine my comments to this particular case. Of course, that's what we're talking about. You can write a law review article later if you want, but I think we're interested in this particular case. Yeah, and Judge, with respect to this particular case under this set of facts, I don't think it's necessary to wait. I think that this is a law. Why shouldn't we not have to wait for our court to decide what the standard is? And Judge, you certainly can't. No, no, I know we can't. I mean, I'm interested in what, why you say we don't have to. I'd like to know what your opinion is on when we can and when we can't. I mean, you say this particular case is better than some reason. Yeah, and what I'm referring to in absolutely horrendous criminal record that this man has, and the fact that he was in prison for an extensive period of time, and it apparently had no... What's the legal case? You're saying if the case is so clear as to what the result is, that it doesn't matter what standard we adopt, under any standard, that we would find it reasonable under any standard, then we can decide it now. Yes, I... Conversely, if we found nothing under any standard that's unreasonable, we can do it now. Exactly, Your Honor. And I think in this particular case, there's one... Unless the panel has any other questions. I want to follow up on what we're talking about here. Based on our responsibility to review reasonableness, what is the standard that we review? We know Rita's take on that each circuit gets to decide whether it's presumptively reasonable if it's within the guidelines. But outside that context, reasonableness is a word. What does it mean for us? What are the bases, what are the criteria that we should be using in the Ninth Circuit to determine whether a sentence like this one is reasonable? Well, I certainly think that you can start with reviewing that Rita rationale at the very least. I think when you've got a district court judge and the sentencing guidelines essentially reaching the same conclusion about what is a reasonable... Okay, so the district court judge went through 3553A... Right. And departed upward, I believe, in this case modestly. Is that correct? No, I don't believe so in this... No, you're right, Your Honor. It was modestly, but I think it was a slight departure upward. But eventually, however Zavala party comes down, it's really a question of what the standard is that our circuit adopts. If we adopt the standard that the Supreme Court permits, which is that it is presumptively reasonable, then we still don't answer the question what overcomes the presumption. I'm interested in what the government's take is on that. What should we be looking at? Why can't we, based upon our inherent power as circuit judges, make a determination now? But if we do that, what is the standard? What do we hold on to? Is it something that we decide based upon our sense of justice? Is it something that we decide based upon 3553A? And if we do that, is that something we ought to be doing or is that something that the trial court ought to be doing where the judge gets to see the demeanor of the witnesses and gets to do all the things that all of us know the trial judges have a better perspective on than we do based upon a dry record? Well, I think Judge, there may be a blend there. I think certainly you need to have a sort of minimal compliance with Booker. We need to have a consideration of 3553A. We have to have an accurate guideline calculation. And, but then I think at that point that we do need to recognize that there should be significant discretion with the lower court. That court is in a position to judge the credibility of these individuals. It certainly is going to need to make factual findings. That's not really helpful as far as that goes, but the Congress could have said, or the Supreme Court, I guess they could have said, as long as they comply with the critique of the Germans, see if the misapportioning by the critique would have fulfilled its obligation. They didn't say that. They said, you can't see if the question is 100% conclusive. Sure, sure. You know, of course you take into account all these things. The judges are very learned. They're true people. They're very bright. They make wonderful judgments, but they still say you've got to determine whether it's reasonable. How do we know whether it's reasonable? What I mean, I think we're asking what is possible to say. Is it like obscenity? Do we know it when we see it? Is it unreasonable? Well, I certainly hope that it becomes more clear than obscenity, Your Honor. However, really other than the sorts of criteria that I Don't you agree that the district judge is too low a set? You couldn't be. I'll let you start. How would you argue that it's a leak? What would make it a leak? Well, I think first of all, I would look at whether the factual findings upon which the district court relied were clearly erroneous. I would look at whether there was an absolute misinterpretation of law in some sense. If the court simply missed one of the factors or totally misinterpreted it, I would look at that. I would look at countervailing evidence. I would look at whether there was a misunderstanding of the guidelines. Those are the sorts of things I would look at, Your Honor. And, you know, under those circumstances, under the individual circumstances of the case, that would be how I would present that sort of case. And that may not be very helpful. And from your perspective, if we did that, then we could decide right now whether this case is reasonable. I think so. So, if we go through and we look at the record and we say, well, this, this, this, and that fact were wrong, it's clearly shown by the record that would be one of the criteria that you indicated might be the basis for determining dissent was unreasonable. For example, and it doesn't really apply to this case, but arguing to say that this man had, in fact, never gone to prison, but the judge said that he had, and the record showed that the contrary, that would obviously be the kind of thing you're talking about, right? Yes, Your Honor. I think that would be the sort of very clear and egregious case. Okay. Thank you. I won't be a dead horse, Your Honor, but I wanted to reiterate as far as my main point on the carjacking conviction is the absence of a contemporaneous between the taking and the intent to harm Mr. Paulson. And that's... Right. I think they focused in on the lack of any required connection in time between the taking of the vehicle and the offense itself. Contrasted to the decisions in Lebron, Cepeda, and Adams, where the defendant placed a gun to the driver's head and that evidence permitted the inference that the defendant would have used force to take the vehicle and therefore satisfied the hollow waste requirement. From our point of view, it is, Your Honor. We have the assault and then we have... There was no evidence that the assault was committed to some other vehicle. No. No, there's not, Your Honor. If there are no other questions with respect to the other issues, I'd rest on the arguments and answer my brief. Thank you. Thank you both very much. Case to interrogate will be submitted.
judges: Reinhardt, Hall, M. Smith